IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| JONATHAN SEAY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CR 322-001 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Petitioner, through counsel, has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, (doc. no. 37), Petitioner's § 2255 motion be **DENIED**, (doc. no. 34), this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

I.      **BACKGROUND**

A.      **Indictment**

On February 3, 2021, the grand jury in the Southern District of Georgia returned a twenty-two-count indictment against Petitioner charging him with twenty-one counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A. United States v. Seay, CR 321-001, doc. no. 1 (S.D. Ga. Feb. 3, 2021) (hereinafter "CR 321-001"). For the wire fraud charges, Petitioner faced a statutory maximum of not more than twenty years imprisonment, not more than a $250,000 fine, not more than

five years of supervised release, a special assessment fee of $100, and restitution as may be ordered by the Court per count of conviction.  Id., doc. no. 2.  For the aggravated identity theft charge, Petitioner faced a statutory sentence of two years imprisonment (consecutive to any other term of imprisonment), not more than a $250,000 fine, not more than one year of supervised release, and a special assessment fee of $100.  Id.  Petitioner initially retained attorneys Franklin J. Hogue and Laura D. Hogue.  Id., doc. nos. 7, 9.  On November 29, 2021, the Court scheduled jury selection and trial to begin January 18, 2022.  Id., doc. no. 35.

### B.      Information and Guilty Plea

On January 13, 2022, following negotiations between the government and Petitioner's counsel, (see doc. no. 12, pp. 10-11, "Rule 11 Tr."), the government filed an Information charging Petitioner with one count of Unlawful Use of a Means of Identification In or Affecting Interstate Commerce, in violation of 18 U.S.C. § 1028(a)(7), (doc. no. 1).  For this new charge, Petitioner faced a statutory sentence of not more than five years imprisonment, not more than a $250,000 fine, not more than three years of supervised release, and a special assessment fee of $100.  (Doc. no. 2.)

That same day, pursuant to a written Plea Agreement, Petitioner pled guilty to Count One of the Information.  (Doc. no. 6, "Plea Agreement.")  The written plea agreement identified the elements of the offense as: "(1) that Defendant knowingly used, without lawful authority, a mean [sic] of identification of another person; (2) that, Defendant did so with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law; and (3) that the use of the means of identification was in or affected interstate or foreign commerce." (Id. at 1-2.)  In exchange for the guilty plea, the government agreed to recommend

a sentence of thirty-six months' probation at sentencing, and to dismiss all charges brought in the Indictment.  (Id. at 2-3.)  Petitioner's plea agreement contained the following factual basis for his guilty plea:

> Beginning on or about December, 25, 2015, in Telfair County, within the Southern District of Georgia, the defendant, Jonathan Seay, did knowingly use in or affecting interstate commerce, without lawful authority, a means of identification, to wit, name and date of birth, knowing that the means of identification belonged to another actual person, with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a felony under any applicable State law, to wit, Making a False Representation of Any Material Fact in the Making of an Application for a Policy of Insurance in violation of the Official Code of Georgia Annotated § 33-1-9(a)(1)(C). All in violation of Title 18, United States Code, Section [1028(a)(7).]

(Id. at 2.)  With his signature on the Plea Agreement, Petitioner "stipulate[d] that the factual basis set out therein is true and accurate in every respect."  (Id. at 10.)

By signing the Plea Agreement, Petitioner also "entirely waive[d] his right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence.  (Id. at 6-7).  Absent those conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal."  (Id. at 7.)  Further, Petitioner waived his right to collaterally attack his conviction and sentence on any ground other than ineffective assistance of counsel.  (Id.)  Moreover, Petitioner agreed he read and carefully reviewed the Plea Agreement with his attorney, understood each provision, and voluntarily agreed to it.  (Id. at 10.)  By signing the Plea Agreement, Petitioner additionally attested counsel had "represented him faithfully, skillfully, and diligently, and [Petitioner] is completely satisfied with the legal advice given and the work performed by his attorney."  (Id. at 8.)

At the arraignment and change of plea hearing, United States District Judge Dudley H. Bowen, Jr., first confirmed no one had threatened or pressured Petitioner into changing his plea and that Petitioner clearly understood there was only an accusation against him, not an indictment.  (Rule 11 Tr., pp. 3-6.)  Judge Bowen then reviewed the Information and asked Petitioner if he wished to waive indictment.  (Id. at 5-6.)  After Petitioner affirmed waiver of an indictment, Petitioner's counsel signed the Waiver of Indictment.  (Id. at 6.)  Judge Bowen then asked preliminary questions of Petitioner, including whether Petitioner was satisfied with his lawyers' preparation of the case.  (Id. at 6-9.)  Petitioner replied "Yes, entirely" when asked whether he was entirely satisfied with his lawyers' handling of the case.  (Id. at 9.)  Judge Bowen reviewed the details of the Plea Agreement and asked if the Petitioner understood the charge contained in the Information.  (Id. at 10.)  Petitioner confirmed he understood, had sufficient time to review the charges with counsel, and had read and reviewed the Plea Agreement with counsel before signing it.  (Id. at 10-11.)

Judge Bowen explained the possible maximum statutory penalty to Petitioner, and Petitioner affirmed he understood.  (Id. at 11.)  Judge Bowen also explained the rights Petitioner would be waiving by pleading guilty.  (Id. at 11-13.)  Among the rights explained, Judge Bowen reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to be present and confront witnesses, and the right to remain silent.  (Id.)  Petitioner affirmed he clearly understood those rights.  (Id. at 13.)  Judge Bowen asked if anyone forced, threatened, or pressured Petitioner into pleading guilty, and Petitioner responded "No, Your Honor."  (Id.)  Judge Bowen also specifically reviewed the appeal and collateral attack waiver provisions of the Plea Agreement.  (Id. at 14-15.)  Judge Bowen reviewed the Plea Agreement and confirmed

4

Petitioner understood the Plea Agreement.  (Id. at 13, 16.)  Judge Bowen also explained the

rights waived by Petitioner by signing the Plea Agreement and explained the Court may accept

or reject the Plea Agreement.  (Id. at 14-16.)

Next, the Court reviewed the factual basis for the guilty plea by proffer.  (Id. at 17-19.)

The government proffered the following:

> [O]n December 25, 2015, the defendant[,] without the permission of Gail
> Daggett[,] used the internet to make an online application for an accidental death
> insurance policy[. T]he company from whom he was applying for the policy
> was Globe Life and Accident.  Their offices are in Oklahoma City, Oklahoma;
> McKinney, Texas; and they are incorporated in the state of Nebraska.  In making
> that application he utilized the name and date of birth of Gail Daggett.
>
> Additionally, that application indicated that the person making the
> application was Gail Daggett.  It named Mr. Seay as the beneficiary and also
> falsely indicated that he was the brother of Ms. Gail Daggett, whom, as I said,
> based on how the application was filled out the representation would be that Ms.
> Gail Daggett was the one actually making the application, and . . . these things
> were a false representation of a material fact.
>
> We've spoken at length with the insurance company and if these
> falsehoods would have been known, the policy would not have been issued.  The
> policy was applied for on the 25th.  It was issued or approved on the 28th of
> December, basically, after a short underwriting process, but given the online
> application and the statements that were made, there was no reason to suspect
> that they were false.
>
> This is in violation of 33-1-9(a)(1)(C) which makes it illegal for any
> natural person who knowingly or willfully makes or aids in the making of a false
> or fraudulent statement or representation of any material fact or thing in the
> making of an application for a policy of insurance and that is a felony in the
> state of Georgia.  A natural person convicted of a violation of this code section
> shall be guilty of a felony and shall be punished by imprisonment for not less
> than two years, nor more ten years or a fine of not more than $10 million or
> both.

(Id.)

When Judge Bowen asked what of the government's proffer Petitioner disagreed with,

Petitioner responded, "Nothing, Your Honor."  (Id. at 19.)  Judge Bowen asked Petitioner if

anyone had guaranteed, predicted, or prophesized the sentence Petitioner would receive, and

Petitioner said no. (Id.) Judge Bowen accepted Petitioner's guilty plea. (Id. at 19-20.)

### C.   Motion to Vacate

On February 11, 2022, Petitioner filed a motion to proceed *pro se* and requested an extension of time to file motions to vacate, raising many of the same issues he brings in the instant § 2255 petition. (Doc. no. 8.) In light of Petitioner's allegations of ineffective assistance, Attorneys Franklin J. Hogue and Laura D. Hogue moved to withdraw as counsel. (Doc. no. 7.) Following briefing, Judge Bowen denied Petitioner's motion for an extension of time, noting the proper procedural vehicle for his claims is a § 2255 motion. (Doc. no. 13, pp. 2-4.)

Judge Bowen then construed Petitioner's motion in part as a motion to withdraw his guilty plea and addressed whether "the defendant can show a fair and just reason for requesting the withdrawal." (Id. at 4.) Reviewing the Rule 11 transcript, the Court noted Petitioner, under oath, admitted no one forced him to plead guilty; affirmed he understood the rights he was waiving, the consequences of his guilty plea, the nature of the charges, and the elements of the plea agreement; and stated he had enough time and opportunity to read and understand the plea agreement, "he was completely satisfied with defense counsel's representation in the matter," and he had enough time to discuss and prepare the case with his lawyers. (Id. at 2-3.)

After evaluating the Buckles factors and finding Petitioner had close assistance of counsel throughout his case and his guilty plea was knowing and voluntary, the Court "would not exercise its discretion to allow Defendant to withdraw his guilty plea." (Id. at 5.) When Petitioner retained new counsel, Judge Bowen granted the previous counsel's motion to withdraw. (Doc. nos. 19.)

### D.     Sentencing

The United States Probation Office prepared a Presentence Investigation Report, (doc. no. 26, "PSI"), which set Petitioner's Total Offense Level at sixteen with criminal history I and a Guidelines imprisonment range of 21 to 27 months.  (PSI ¶¶ 23, 26, 55.)  After enhancements and adjustments, Petitioner's offense level was sixteen, and the probation officer found Petitioner had not accepted responsibility for his crime.  (PSI ¶¶ 13, 22.)  The probation officer's finding was based on Petitioner's statements that "he pled guilty to something that he did not do" and "he did not understand what he was entering a plea to because of the rushed timing of the plea."  (PSI ¶ 12.)  Petitioner also noted to the probation officer he did not want to withdraw his plea, but he did want it vacated.  (Id.)

The statutory maximum term of imprisonment for Count One was five years.  (PSI ¶ 54.)  The sentencing occurred on July 7, 2022.  (Doc. no. 36.)  Judge Bowen adopted the factual statements in the PSI, to which Petitioner had no objections, as well as the conclusions contained therein.  Petitioner, through counsel, also informed the Court that Petitioner's prior objection to the PSI's determination he did not qualify for acceptance of responsibility was no longer outstanding.  (Id. at 2.)  Judge Bowen determined the advisory Guidelines range was 21 to 27 months of imprisonment, one to three years supervised release, $10,000 to $95,000 in fines, no restitution, and a $100 special assessment.  (Id. at 2-3.)  After hearing remarks from all interested parties including Petitioner and his counsel, Judge Bowen accepted the plea agreement and sentenced Petitioner to three years of probation.  (Id. at 9-10.)  In keeping with the terms of the plea agreement, Petitioner did not file a direct appeal.

### E.     § 2255 Proceedings

Petitioner timely filed the instant § 2255 motion to vacate, set aside, or correct his

sentence, raising the following claims:

(1)    Petitioner has obtained evidence, newly available, with potential exculpatory value.

(2)    His guilty plea was not entered knowingly because counsel provided ineffective assistance of counsel by failing to sufficiently review the plea agreement with Petitioner and rushing Petitioner to enter into the plea.

(3)    Counsel provided ineffective assistance by failing to conduct an adequate pretrial investigation, including hiring an investigator and interviewing witnesses.

(4)    Counsel provided ineffective assistance by failing to pursue readily available and useful evidence that Petitioner requested counsel acquire.

(See generally doc. nos. 34, 38.)

On September 13, 2023, Respondent filed a motion to dismiss, contending the new evidence does not have exculpatory value and is not cognizable in a § 2255 case, Petitioner's guilty plea was knowing, Petitioner fails to meet his burden establishing ineffective assistance of counsel, and his ineffective assistance claims are barred by his collateral attack waiver.  (See generally doc. no. 37, "Resp't's Mot. to Dismiss.")  On September 27, 2023, Petitioner filed a response in opposition to the motion, reiterating the same arguments as his motion.  (Doc. no. 38, "Pet'r's Resp. Br.")

## II.    DISCUSSION

### A.    No Evidentiary Hearing Required

Petitioner asks for an evidentiary hearing.  (Id. at 1, 9.)  Section 2255 does not require an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ."  Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)).  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.  Nor is a hearing

required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted).  Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible."  Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004).

While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised. Rosin v. United States, 786 F.3d 873, 878-79 (11th Cir. 2015); Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984).  For example, because the deficient performance prong of ineffective assistance is judged by "whether counsels' representation fell below an objective standard of reasonableness, not whether counsel could provide some explanation for their actions," an evidentiary hearing exploring strategic decisions is not automatically required. Thomas v. United States, 596 F. App'x 808, 810 (11th Cir. 2015) (per curiam).  When the Court "can conceive of a reasonable motivation for counsel's actions, [it] will deny a claim of ineffective assistance without an evidentiary hearing."  Gordon v. United States, 518 F.3d 1291, 1302 (11th Cir. 2008); see also Campbell v. United States, 743 F. App'x 412, 416-18 (11th Cir. Oct. 2, 2018) (affirming district court's rejection without hearing of ineffective assistance claim in investigating and litigating motion to suppress).  Because Petitioner's claims lack merit as a matter of law, or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.

**B.     Petitioner Has Not Established He Is Entitled to Relief on Ground One**

Ground One alleges Petitioner "obtained a letter from Wells Fargo (date July 14, 2023) which constitutes exculpatory evidence. . . .  In light of this new evidence, no reasonable juror would have determined that Movant initiated these transactions knowingly or with the intent to commit any unlawful activity, as would be required to co[n]vict."  (Doc. no. 34, p. 5, "Petition.")  Respondent construed this as a freestanding actual innocence claim that does not provide an independent basis for relief under § 2255.  (Resp't's Mot. to Dismiss, pp. 18-19.) Petitioner asserts Ground One is not a freestanding actual innocence claim and concedes if it were, it would not be cognizable.  (Pet'r's Rep. Br., p. 8.); see Cunningham v. Dist. Att'y's Off. for Escambia Cnty., 592 F.3d 1237, 1273 (11th Cir. 2010) ("[A] showing of actual innocence 'does not by itself provide a basis of relief." (quoting Schlup v. Delo, 115 U.S. 851, 861 (1995))); see also Amodeo v. FCC Coleman – Low Warden, 984 F.3d 992, 1002 n.3 (11th Cir. 2021) (noting while Cunningham and similar cases "arose in the § 2254 habeas context, their logic holds in the postconviction § 2255 context").  Rather, Petitioner asserts the Wells Fargo letter is "relevant for this Court's consideration under Mr. Seay's Ground 4."  Id.  The Court agrees with the parties that Ground One does not entitle Petitioner to relief as a freestanding actual innocence claim and will, as Petitioner requests, consider the Ground One allegations when discussing the merits of Ground Four, *infra*.

**C.     Petitioner Has Not Established He Is Entitled to Relief on Ground Two**

Petitioner asserts in Ground Two he received ineffective assistance of counsel because defense counsel, Mr. Hogue, failed to sufficiently review the Plea Agreement with Petitioner, pressuring and rushing Petitioner to enter the plea.  According to Petitioner, he did not enter the guilty plea knowingly because Mr. Hogue hurried him into accepting the plea without the

benefit of thorough consideration of his options with counsel.  As discussed below, the record establishes Petitioner's guilty plea was knowingly and voluntarily entered, and Petitioner's claims about Mr. Hogue rushing Petitioner and failing to fully advise him of available options form no basis for relief.

### 1.   Petitioner's Guilty Plea Was Knowing and Voluntary

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea.  United States v. Broce, 488 U.S. 563, 569 (1989).  In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary.  Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).  The Eleventh Circuit has described the requirements for a valid guilty plea as follows:  "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights.  A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense."  United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997).

A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt."  Id.  Thus, a defendant must receive "real notice of the true nature of the charged crime."  Id.  Moreover, "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."  Brady v. United States,

397 U.S. 742, 748 (1970).  "[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it."  United States v. Ruiz, 536 U.S. 622, 629 (2002).

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations omitted).  In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea."  Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

## 2. Judge Bowen's Colloquy with Petitioner Satisfied the Core Principles

Given the procedural posture of the case, Judge Bowen first reviewed the differences between a charge brought by indictment, and one brought by information.  (Rule 11 Tr., pp. 4-6.)  Petitioner affirmed he understood the differences and wished to waive the indictment process.  (Id.)  Judge Bowen reviewed the charge brought against Petitioner in the Information, specifically informed Petitioner in clear terms of the charge to which he was pleading guilty, and reviewed the elements of the offense the government would have to prove to obtain a conviction.  (Id. at 9-10.)  Petitioner testified he understood this information.  (Id.)  Judge

Bowen also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights.  (Id. at 11-13.)  Petitioner testified that no one had forced, threatened, or pressured him to plead guilty.  (Id. at 13.)

When Judge Bowen initially asked Petitioner whether he had enough time to discuss and prepare for this case with counsel, Petitioner first said that he wasn't sure if he understood the question.  (Id. at 9.)  Judge Bowen then simplified the question by asking, "Have you had enough time to discuss your case and prepare your case to this point with your lawyers?"  (Id.)  Petitioner replied, "Oh, yes.  Yes, Your Honor."  (Id.)  Finally, Petitioner also testified he was "entirely" satisfied with his lawyers' services.  (Id.; see also Plea Agreement, p. 8 ("Defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney."); id. at 10 ("I have read and carefully reviewed this agreement with my attorney.")).

Finally, Judge Bowen informed Petitioner of the possible penalty he faced upon conviction.  In particular, Judge Bowen explained Petitioner could be sentenced up to five years in prison, up to $250,000 in fines, up to three years on supervised release, and a $100 special assessment for conviction of Count One to which Petitioner was pleading guilty.  (Id. at 11, 15.)  Petitioner testified he understood the potential penalties.  (Id. at 11.)

Petitioner argues his guilty plea was not entered knowingly because he was rushed into accepting it.  (Pet'r's Resp. Br., p. 5.)  Despite multiple opportunities, Petitioner expressed no hint of dissatisfaction or pressure during the lengthy plea colloquy.  At no point did Petitioner ask for more time to consider his decision to enter a plea deal, even following an exchange between Petitioner and the Court about whether Petitioner had adequately discussed the plea

with his counsel.  (Rule 11 Tr., p. 9.)  Indeed, Petitioner confirmed under oath that no one had forced, threatened, or pressured him to plead guilty.  (Id. at 13.)  The Court declines to accept Petitioner's new allegations over his sworn testimony.  See Gambrel v. United States, No. CR 109-003, 2013 WL 3934205, at *14 (S.D. Ga. July 30, 2013); Blackledge, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity."); see also United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."); United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting that "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely").

Judge Bowen's thorough plea colloquy ensured Petitioner understood both the nature of the charge and the consequences of his guilty plea, and Petitioner was not coerced into pleading guilty.  Moriarty, 429 F.3d at 1019.  Accordingly, the Court concludes Petitioner entered a knowing and voluntary guilty plea to the § 1028(a)(7) charge.  Petitioner has not argued, let alone shown, a reasonable probability that but for any alleged error at the Rule 11 proceeding he would not have entered his guilty plea.  Dominguez Benitez, 542 U.S. at 83.

Although the Court finds Petitioner's guilty plea was knowing and voluntary, because Petitioner alleges Mr. Hogue provided constitutionally ineffective assistance leading up to entry of the guilty plea, the Court will also address the merits of Petitioner's claim.  See, e.g., Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam) (stating "accused who has not received reasonably effective assistance from counsel in deciding to plead guilty cannot be bound by" plea).

### 3.    Mr. Hogue's Performance as Defense Counsel Was Neither Deficient Nor Prejudicial

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  See Massaro v. United States, 538 U.S. 500, 505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013) (per curiam). Under the first prong, Petitioner must show "counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.

### a.    The Deficiency Prong of Strickland Is Highly Deferential when the Petitioner Has Pled Guilty

As to the first prong of Strickland, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).  "Petitioner must prove that the approach taken by defense counsel would not have been used by professionally competent counsel."  Harich v. Dugger, 844 F.2d 1464, 1470 (11th Cir. 1988) (en banc), partially overruled on other grounds, Davis v. Singletary, 119 F.3d 1471, 1481-82 (11th Cir. 1997). The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different . . . .  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"  Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc).  Strategic decisions are entitled to a "heavy measure of deference."  Strickland, 466 U.S. at 691.

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc)). The Court must resist "using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time." Chandler, 218 F.3d at 1316; see also Waters, 46 F.3d at 1514 ("The widespread use of the tactic of attacking trial counsel by showing what might have been proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight.")

The impact of a guilty plea on the deficiency analysis is substantial both with respect to the scope and nature of the inquiry. As to scope, the Supreme Court explained as follows:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann [v. Richardson, 397 U.S. 759 (1970)].
>
> . . . [I]t is not sufficient for the criminal defendant seeking to set aside such a [guilty] plea to show that his counsel in retrospect may not have correctly apprised the constitutional significance of certain historical facts. . . .
>
> . . . Often the interests of the accused are not advanced by challenges that would only delay the inevitable date of prosecution, or by contesting all guilt. A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused might well suggest

the advisability of a guilty plea without elaborate consideration of whether pleas in abatement . . . might be factually supported.

Tollett, 411 U.S. at 267-68.

As to nature of the inquiry, "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial . . . ." Stano v. Dugger, 921 F.2d 1125, 1151 (11th Cir. 1991) (en banc) (quoting Wofford v Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984)). When a client pleads guilty, defense counsel "need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." Id.; see also Carter v. United States, 288 F. App'x 648, 649 (11th Cir. 2008) (per curiam). Counsel can impart such an understanding by offering his informed opinion on the best choice after examining the facts, circumstances, pleadings, and laws at issue. Wofford, 748 F.2d at 1508.

Because no absolute rules dictate reasonableness, counsel has no duty to investigate particular facts or defenses. Chandler, 218 F.3d at 1317. Counsel is not required to "pursue every path until it bears fruit or until all available hope withers." Puiatti v. Sec'y, Fla. Dep't of Corr., 732 F.3d 1255, 1280 (11th Cir. 2013) (quoting Foster v. Dugger, 823 F.2d 402, 405 (11th Cir. 1987)). As has been long-settled, "that a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing." McMann, 397 U.S. at 770.

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012). In assessing whether a

petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58.  Thus, a petitioner must prove "serious derelictions" in counsel's advice regarding the plea. Stano, 921 F.2d at 1150-51.

**b.      Petitioner's Pre-Plea Claims in Ground Two Are Meritless**

In Ground Two, Petitioner asserts counsel provided ineffective assistance in the pre-plea phase by failing to adequately review the Plea Agreement with Petitioner and rushing Petitioner into signing the Plea Agreement.  (See generally Petition, p. 6.)  Petitioner never alleges he would have insisted on trial had counsel not made any of these described errors. Instead, he merely alleges counsel's error "blindsided" Petitioner, placed "pressure" on his decision to plead guilty, and that Mr. Hogue told Petitioner he had to decide "right now" while in a meeting at Georgia Bureau of Investigation offices.  (Pet'r's Resp. Br., pp. 4-5.)

None of these arguments show counsel's representation fell below an objective standard of reasonableness or a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. Moreover, Petitioner concedes "Mr. Hogue conveyed the basic terms of the Plea Agreement." (Pet'r's Resp. Br., p. 5); see also Stano, 921 F.2d at 1150–51.  These reasons, combined with the Rule 11 analysis above, prove Petitioner entered into a knowing and voluntary guilty plea. Thus, Petitioner's pre-plea ineffective assistance arguments in Grounds Two are meritless. Broce, 488 U.S. at 569; see also Hatterer v. United States, No. 42-cv-223, 2022 WL 1612075, at *21 (S.D. Ga. May 20, 2022) (rejecting Petitioner's "conclusory allegations" counsel "rushed her into pleading guilty" where Petitioner "testified to just the opposite during the change of plea hearing").

### D.     Petitioner Has Not Established He Is Entitled to Relief on Grounds Three and Four

Petitioner asserts in Grounds Three and Four he received ineffective assistance of counsel because Mr. Hogue failed to conduct an adequate pretrial investigation.  Specifically, Petitioner contends in Ground Three that Mr. Hogue did not hire an investigator and did not interview potential witnesses identified by Petitioner.  Petitioner contends such investigation "may have fostered the development of viable defenses at trial."  (Pet'r's Resp. Br., p. 6.)  Petitioner also asserts in Ground Four that Mr. Hogue failed to obtain readily available and potentially exculpatory evidence, specifically evidence from Wells Fargo suggesting that transactions initiated by Globe Life Insurance on Petitioner's bank statements were "unauthorized or the result of error."  (Id. at 6-8.)

### 1.     Mr. Hogue's Pre-Plea Case Investigation Was Not Constitutionally Deficient

Applying the Strickland standard, it cannot be said Mr. Hogue's performance fell below an objective standard of reasonableness concerning the pre-plea investigation.  "[T]he appropriate standard for evaluating counsel's pretrial investigation is 'reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'"  Stano, 921 F.2d at 1149 (quoting Strickland, 466 U.S. at 691).  "Effective counsel includes familiarity of counsel with the case and an opportunity to investigate it *if necessary* in order meaningfully to advise the accused of his options."  Calloway v. Powell, 393 F.2d 886, 888 (5th Cir. 1968) (emphasis added).[1]

---

[1] In Bonner v. City of Prichard, the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981.  661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

Here, Petitioner provided the names and described the anticipated testimony of potential witnesses to Mr. Hogue.  (Pet'r's Resp. Br., pp. 6, 12.)  Petitioner fails to identify what, if any, information Mr. Hogue may have gleaned from interviewing Petitioner's proposed witnesses that was lacking from his own descriptions of their anticipated testimony. Moreover, Petitioner's provided descriptions of the anticipated testimony were sufficient for Mr. Hogue to "provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial."  Wofford, 748 F.2d at 1508.  Thus, in the pre-plea context, Mr. Hogue's failure to interview Petitioner's proposed witnesses was not constitutionally deficient.

Likewise, with regards to Petitioner's claims that Mr. Hogue failed to obtain exculpatory evidence, Mr. Hogue's failure to obtain evidence directly from Wells Fargo was not objectively unreasonable.  The letter cited by Petitioner from Wells Fargo notes that "resolution letters" were "previously sent" to Petitioner regarding claims paid on April 23, 2018, and July 23, 2018.  (Resp't's Mot. to Dismiss, Ex. 1.)  Even assuming Petitioner was unaware in 2018 that these claims were paid *because* Wells Fargo's "investigation deemed the transactions were unauthorized or an error had occurred," (id. at 1), he was aware that he was contesting the relevant charges and conveyed that information to Mr. Hogue when requesting Mr. Hogue subpoena the bank's records, (see id.; Petition, p. 9; Pet'r's Resp. Br., pp. 6-7.) Moreover, Petitioner fails to establish the letter from Wells Fargo has exculpatory value.  As Respondent points out, the crime to which Petitioner pled guilty was fraudulently submitting an insurance application and the payments on the ensuing policy are immaterial.  (See Resp't's Mot. to Dismiss, p. 16.)  As with the potential witnesses described above, Petitioner fails to

establish how Mr. Hogue's investigation, beyond the information Petitioner had available at the time and provided to Mr. Hogue, would have changed Mr. Hogue's ability to "provide his client with an understanding of the law in relation to the facts." Wofford, 748 F.2d at 1508. Mr. Hogue's failure to obtain bank records from Wells Fargo in the pre-plea context was not constitutionally deficient.

### 2.   Petitioner Cannot Meet the Prejudice Prong of Strickland

Even if Petitioner had shown deficient performance, which he has not, under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted). Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012). In assessing whether a

petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58.  Thus, a petitioner must prove "serious derelictions" in counsel's advice regarding the plea. Stano, 921 F.2d at 1150-51.

Here, the record shows Mr. Hogue negotiated a favorable plea agreement that dismissed twenty-one out of twenty-two charges against Petitioner carrying a sentence up to twenty years imprisonment per count of conviction. Compare (doc. no. 6) with CR 321-001, doc. nos. 1-2. The plea agreement also resulted in a reduction of the last charge from Aggravated Identity Theft under 18 U.S.C. § 1028A to a charge of Unlawful Use of a Means of Identification In or Affecting Interstate Commerce under 18 U.S.C. § 1028.  In his sworn testimony to Judge Bowen at the Rule 11 proceeding, Petitioner confirmed he had reviewed the case and Plea Agreement with Mr. Hogue, was satisfied with the help Mr. Hogue had provided, knew the rights he was giving up by pleading guilty, and wanted to plead guilty.  He never mentioned any problems or disagreement over Mr. Hogue's pre-plea investigation.

Petitioner cannot escape his sworn declarations to Judge Bowen in an after-the-fact assertion that there is a "reasonable probability [he] would have persisted in his desire to go to trial." (Pet'r's Resp. Br.), pp. 6, 8; see Blackledge, 431 U.S. at 74; Rogers, 848 F.2d at 168; Stitzer, 785 F.2d at 1514 n.4.  "The law permits no one to accept the benefit of a guilty-plea deal, suffer buyer's remorse, then go back and criticize pretrial defense efforts that were cut off by agreeing to the deal." Harris v. United States, No. CV 410-069/CR 407-285, 2011 WL 1740702, at *5 (S.D. Ga. Apr. 11, 2011), adopted by, 2011 WL 1740306 (S.D. Ga. May 5, 2011).  Petitioner cannot meet either prong of Strickland, and he is not entitled to relief.

III.     **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, (doc. no. 37), Petitioner's § 2255 motion be **DENIED**, (doc. no. 34), this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 5th day of December, 2023, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA